IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| SHAMARUS T. CARTER, #02278813 | § | |
| VS. | § | CIVIL ACTION NO. 2:21cv421 |
| DIRECTOR, TDCJ-CID | § | |

REPORT AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE

Petitioner Shamarcus Torrell Carter, a prisoner confined within the Texas Department of Criminal Justice (TDCJ), proceeding *pro se*, filed this habeas action challenging a Cass County conviction. The case was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

For reasons explained below, the Court recommends that the petition be denied, the case dismissed with prejudice, and that Petitioner be denied a certificate of appealability *sua sponte*.

**I. Procedural History**

On July 18, 2019, after a jury trial, Carter was sentenced to life imprisonment for one count of assault causing family violence with a previous conviction—with two enhancements, (Dkt. #16, pg. 101). He filed a direct appeal, and the appellate court affirmed the conviction in a written, unpublished opinion. *See Carter v. State*, 2020 WL 5223327, at *1 (Tex. App.—Texarkana, 2020, pet. ref'd). The Texas Court of Criminal Appeals refused his petition for discretionary review on January 13, 2021. Carter filed a state habeas application, which was denied with a written order on September 22, 2021, (Dkt. #16, pg. 1811). He then filed this federal petition on November 1, 2021, (Dkt. #1).

1

## II. Carter's Habeas Petition

Petitioner raises several claims in his petition. He first insists that he was denied his right to a speedy trial. He also claims that the trial court erred by (1) allowing a Dallas special prosecutor "two bites at the apple" when prosecuting him, (2) overruling his objections to the indictment, (3) failing to recuse himself, (4) allowing the victim to authenticate his voice on a phone call, (5) failing to grant a mistrial, and (6) overruling a *Batson* challenge.

Carter further contends that his defense counsel was constitutionally ineffective for failing to (1) notify, contact, and prepare, (2) investigate, (3) interview and call witnesses, (4) object, and (5) urge a timely *Batson* challenge. Finally, Carter insists that he is actually innocent—seeking a court order vacating his conviction and ordering his immediate release.

## III. Respondent's Answer and Johnson's Response

Respondent filed an answer, (Dkt. #13), addressing Carter's petition. Respondent maintains that Carter's claims are without merit and urges this Court to dismiss his petition and deny a request for a certificate of appealability.

In his response, (Dkt. #14), Carter maintains that Respondent's answer demonstrates the "malfunctions" within the state court criminal system. He also contends that the Respondent failed to address his claims concerning due process violations.

## IV. Standard of Review

The role of federal courts in reviewing habeas petitions filed by state prisoners is exceedingly narrow. A prisoner seeking federal habeas corpus review must assert a violation of a federal constitutional right; federal relief is unavailable to correct errors of state constitutional, statutory, or procedural law unless a federal issue is also present. *See Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir. 1993); *see also Estelle v. McGuire*, 503 F.3d 408, 413 (5th Cir. 2007) ("We

first note that 'federal habeas corpus relief does not lie for errors of state law.'") (internal citation omitted). When reviewing state proceedings, a federal court will not act as a "super state supreme court" to review error under state law. *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007).

Federal habeas review of state court proceedings is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996. Under the AEDPA, which imposed several habeas corpus reforms, a petitioner who is in custody "pursuant to the judgment of a State court" is not entitled to federal habeas relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established law, as determined by the Supreme Court of the United States; or

> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

To show that trial counsel was ineffective, Carter must demonstrate both deficient performance and ensuing prejudice. *See Strickland v. Washington*, 466 U.S. 668 (1984). In evaluating whether an attorney's conduct was deficient, the question becomes whether the attorney's conduct fell below an objective standard of reasonableness based on "prevailing norms of practice." *See Loden v. McCarty*, 778 F.3d 484, 494 (5th Cir. 2016).

Moreover, to establish prejudice, the petitioner must show that there is a reasonable probability that—absent counsel's deficient performance—the outcome or result of the proceedings would have been different. *Id.*; *see also Reed v. Stephens*, 739 F.3d 753, 773 (5th Cir. 2014) (quoting *Strickland*, 466 U.S. at 687)). It is well-settled that a "reasonable probability" is one that is sufficient to undermine confidence in the outcome of the proceedings. *Strickland*, 466 U.S. at 694. Importantly, the petitioner alleging ineffective assistance must show both deficient

3

performance and prejudice. *See Charles v. Stephens*, 736 F.3d 380, 388 (5th Cir. 2013) ("A failure to establish either element is fatal to a petitioner's claim.") (internal citation omitted). Given the already highly deferential standard under the AEDPA, establishing a state court's application whether counsel was ineffective "is all the more difficult." *Harrington v. Richter*, 562 U.S. 86, 105 (2011); *see also Charles*, 736 F.3d at 389 ("Both the *Strickland* standard and the AEDPA standard are highly deferential, and when the two apply in tandem, review is doubly so.") (internal quotations and citation omitted).

## V. Discussion and Analysis

A review of the record and pleadings demonstrate that Carter's federal habeas petition should be denied. He failed to demonstrate that the state court's adjudication of his habeas claims was unreasonable or contrary to federal law.

### 1. Speedy Trial

In his first claim, Carter argues that his right to a speedy trial was violated because he was arrested and formally charged on September 7, 2017—but the grand jury was not presented the felony indictment until January 16, 2019. He also states that he was held in the Dallas County Jail from the date of his arrest on September 7, 2017, until February 27, 2019, when Cass County officials retrieved him. Carter insists that he moved for speedy trial on September 11, 2017, through a pro se handwritten motion; however, he maintains that State "failed or refused to file for [the] record," and that the trial court denied his motions, (Dkt. #1, pg. 28). Trial commenced on November 16, 2019—over two years after the September 2017 arrest.

The Sixth Amendment to the United States Constitution provides that "the accused shall enjoy the right to a speedy … trial." U.S. Const. amend. VI. In protecting criminal defendants, this "guarantee is an important safeguard to prevent undue and oppressive incarceration prior to trial,

to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself." *United States v. Ewell*, 383 U.S. 116, 120 (1966).

When examining whether the right to a speedy trial was violated, courts are to balance four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's diligence in asserting the right, and (4) prejudice to the defendant. *United States v. Duran-Gomez*, 984 F.3d 366, 373 (5th Cir. 2020) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). This inquiry requires a "difficult and sensitive" balancing test. *Goodrum*, 547 F.3d at 247. No one single factor is determinative; rather, "they are related factors and must be considered together with such other circumstances as may be relevant." *Barker*, 407 U.S. at 533. The AEDPA limits the court's focus "to the objective reasonableness of the result of the state court's balancing of the *Barker* factors" under the facts supporting the conviction. *Id*.

While the state habeas court did not enter findings of fact and conclusions of law, the appellate court addressed this claim in affirming Carter's direct appeal. The court addressed each *Barker* factor—determining that the trial court did not err in denying his motion for a speedy trial— and outlining the timeline as follows:

> On or about September 7, 2017, Carter was arrested in Dallas County for the family violence assault on Dara Thomas that occurred on June 20, 2017, in Cass County. On September 11, 2017, he was appointed counsel by the County Court of Law of Cass County. Carter apparently remained in Dallas County custody until sometime in February 2019. On January 16, 2019, Carter was indicted for the June 20 family violence assault, and a capias for his arrest was issued on January 30, 2019. Carter was arrested by Cass County on February 27, 2019.

> Although he was represented by appointed counsel, Carter filed a pro se motion for speedy trial on February 28, 2019. In his motion, Carter alleged that he had been arrested on September 7, 2017, and had remained in custody since his arrest. He also alleged that he had written a letter to the district attorney requesting a speedy trial, but a copy of the letter does not appear in the record. Carter then alleged that he would be prejudiced if the trial was not held before April 29, 2019, because Thomas, who he alleged would testify on his

behalf, would not be available to testify after March 29, 2019. Finally, Carter requested that the trial court set the case to be tried on or before April 29, 2019.

At a pretrial hearing on March 11, 2019, Carter entered a plea of not guilty and represented to the trial court that there was nothing further that needed to be taken up. At a pretrial hearing on April 8, 2019, the trial court informed Carter that it had received a handwritten motion from him and that it would not look at it since he was represented by counsel. His appointed counsel again represented to the trial court that there were no defense issues that needed to be taken up. On April 16, 2019, Carter filed a pro se motion to appear pro se. At a pretrial hearing on May 6, 2019, Carter's counsel announced that Carter wanted to try his case pro se and requested that he be allowed to withdraw as counsel. The trial court granted counsel's motion to withdraw and appointed new counsel for Carter.

At the next pretrial hearing, on June 3, 2019, Carter's new counsel announced that Carter had informed her that he wanted to represent himself. Yet, after Carter conferred further with his new counsel, he withdrew his motion to appear pro se. Afterward, Carter's counsel informed the trial court that there were no other pretrial issues that needed to be taken up. On June 13, 2019, Carter filed a pro se motion to dismiss prosecution in which he sought dismissal of the indictment based on alleged speedy trial violations.

The day before the trial began, at the final pretrial hearing on July 15, 2019, Carter's counsel announced that Carter wanted to re-urge his motion for speedy trial. When the trial court noted that the basis of the motion was the unavailability of Thomas, the State informed the trial court that Thomas was available to testify. Carter's counsel then argued that the charges had been pending for twenty-five months and that he has not been able to work and provide for his children. His counsel also argued that Carter held that he could have been working on a pending matter in Dallas that had been pending since 2017 more effectively if this case had been resolved. His counsel also complained that the Dallas County assistant district attorney, who was assisting in the Cass County prosecution, would have "two bites at the apple" on his pending case in Dallas. After noting that the trial of the case would start the next day and that the basis of the written motion, i.e., the unavailability of Thomas to testify, was groundless, the trial court denied the motion.

*Carter*, 2020 WL 5223327, at *7.

In balancing the *Barker* factors, the court ultimately found no speedy trial violation.

Specifically, it reasoned as follows:

Having addressed the four Barker factors, we must now balance them. *Dragoo*, 96 S.W.3d at 316. The twenty-two-month delay in the trial, for which the State gave no reason, weighs in favor of finding a speedy trial violation. Nevertheless, Carter's delay in presenting his speedy trial motion until the day before trial and his filing of a motion to dismiss based on alleged speedy trial violations weigh heavily against his claimed violation. Moreover, Carter failed to make a showing that they delay of his trial prejudiced him. Based on this

record, we find that the trial court did not err in denying Carter's speedy trial motion. We, therefore, overrule Carter's third issue.

*Carter*, 2020 WL 5223327, at *9.

Under the AEDPA, these findings are entitled to deference. As the last-reasoned opinion on this issue, the look-through doctrine provides that the federal court reviewing a habeas petition "ignore—and hence, look through—an unexplained state court denial and evaluate the last reasoned state court decision." *See Russell v. Denmark*, 68 F.4th 252, 263 (5th Cir. 2023) (quoting *Woodfox v. Cain*, 772 F.3d 358, 369 (5th Cir. 2014)). A federal court's disagreement with the state court's weighing of the *Barker* factors is not ground for reversal or granting of a habeas petition; rather, a reviewing federal court will deny habeas relief if the balance of the *Barker* factors is objectively reasonable and not contrary to law. *Id.* ("A reviewing federal court's disagreement with the state court's weighing of individual *Barker* factors is thus not itself grounds for reversal."); *see also Ducksworth v. Davis*, 751 F. App'x 556, 559 (5th Cir. 2018) ("We apply AEDPA's standards to the 'last reasoned state court decision' on the claim.").

Here, the state appellate court's opinion affirming the trial court's denial of Carter's motion for a speedy trial is both objectively reasonable and not contrary to law.

### a. Length of Delay

The first factor—length of delay—functions as a "triggering mechanism" within the jurisdiction of the Fifth Circuit, as courts examine factors two, three, and four if the trial has been delayed for at least one year. *Id.* at 374; *see also Goodrum v. Quarterman*, 547 F.3d 249, 257 (5th Cir. 2008) (explaining that the rule in the Fifth Circuit is "[a]s the Supreme Court observed, courts generally view a delay of approximately one year as sufficient to require a full *Barker* analysis.").

Carter was arrested on September 7, 2017, and his trial began on July 16, 2019. The appellate court found that this twenty-two-month delay "was sufficient to trigger the *Barker*

analysis and weighs in favor of finding a speedy trial violation." *Carter*, 2020 WL 5223327 at *7. Such a finding was objectively reasonable. *See, e.g.*, *Russell*, 68 F.4th at 263 ("For factor one—length of delay—the Mississippi Court of Appeals properly found that the 25-month delay in Russell's case weighed against the State, though not heavily."); *United States v. Green*, 508 F.3d 195, 202 (5th Cir. 2007) (explaining that the Fifth Circuit has held that a delay of less than one year will rarely qualify as "presumptively prejudicial" for purposes of triggering the *Barker* analysis).

### b. Reason for the Delay

Under this factor, the Supreme Court held that "different weights should be assigned to different reasons" giving rise to the delay. *Barker*, 407 U.S. at 531 ("Closely related to length of delay is the reason the government assigns to the delay. Here, too, different weights should be assigned to different reasons."); *see also United States v. Smith*, 997 F.2d 881 (5th Cir. 1993).

Here, the State provided no reason or justification for the delay in Carter's trial. Specifically, the appellate court explained that during the hearing on Carter's motion for a speedy trial, the State "offered the trial court no reason for the delay" and noted that the State failed to explain why it failed to promptly indicting and trying him—determining that the State's lack of a justification weighed in favor of finding a speedy trial violation. *Carter*, 2020 WL 5223327 at *8. Given the lack of a reason, the appellate court's adjudication of this factor was objectively reasonable.

### c. Assertion of the Right to a Speedy Trial

It is well-settled that a defendant has no duty to bring himself to trial. However, a defendant has the responsibility to assert his right to a speedy trial. *Barker*, 407 U.S. at 529 ("We think the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one

of the factors to be considered in an inquiry into the deprivation of the right."). A defendant's failure to assert his right—and assert it properly—make it "difficult" for him to establish that the right was violated even if he repeatedly moves for dismissal on speedy trial grounds. *See Laws v. Stephens*, 536 F. App'x 409, 413 (5th Cir. 2013) ("Thus, it is possible for a defendant to insufficiently assert his speedy trial rights despite repeatedly moving for dismissal on speedy trial grounds.") (internal quotations and citation omitted).

Here, the appellate court determined that Carter's delay in filing his pro se motion for a speedy trial evinced his desire to dismiss his case rather than proceed to trial. *Carter*, 2020 WL 5223327, at *8. In finding that Carter sought dismissal rather than a speedy trial, the court highlighted that Carter had been incarcerated on September 7, 2017, but "did not file his pro se speedy trial motion until February 28, 2019, nine days after coming into Cass County's custody." *Id*. Therefore, the court determined that "nothing in the record [] would support a conclusion that Carter made any effort to seek a speedy trial before filing his pro se motion" and held that Carter's seeking a dismissal—rather than a speedy trial—weighed heavily against finding a speedy trial violation. *Id*.

Carter has not shown that this finding was unreasonable or contrary to federal law. Indeed, the record shows that Carter did not file his motion for a speedy trial until February 28, 2019— approximately 539 days after he was arrested on September 7, 2017.The Fifth Circuit has held that if a defendant "waits too long" to assert his right to a speedy trial, his "silence will be weighed against him." *See Gomez*, 984 F.3d at 378; *see also United States v. Parker*, 505 F.3d 323, 329-30 (5th Cir. 2007) ("Mere assertion of the speedy trial right is not enough to for this factor to weigh in a defendant's favor. If he waits too long, his pre-assertion silence will be weighed against him."). Carter's pre-assertion silence for over 500 days weighs heavily against him, and the state court's

adjudication of this factor was not unreasonable or contrary to federal law. While Carter insists that he submitted a letter to the prosecutor urging his speedy trial rights, the state court explained that the letter was devoid from the record. Because allegations without evidentiary support are insufficient under federal habeas review, the state court's adjudication of this factor was reasonable—and this factor weighs against finding a speedy trial violation.

### d. Prejudice

The final factor concerns whether the defendant suffered prejudice as a result of the delay. *Barker*, 984 F.3d at 378-79. It is the burden of the defendant to demonstrate prejudice. Courts examine prejudice in light of a defendant's interests the speedy trial right is designed to protect: (1) oppressive pre-trial incarceration, (2) anxiety and concern of the accused, and (3) the possibility that his defense will be impaired. *Duran-Gomez*, 984 F.3d at 380; *see also Parker*, 505 F.3d at 330 (outlining these three protections). Of these three interests, the Supreme Court has held that "limiting the defendant's ability to prepare his case is the most serious." *United States v. Frye*, 489 F.3d 201, 212 (5th Cir. 2007) (citing *Barker*, 407 U.S. at 532).

Here, the state court found that Carter received full credit for the time he spent in jail toward his sentence and that there was no evidence that the delay of his trial impaired his ability to prepare for his defense. *Carter*, 2020 WL 5223327, at *9. Given Carter's failure to describe how he was prejudiced by the delay in his trial, he has failed to meet his burden to demonstrate prejudice—and the state court's adjudication of this factor was reasonable. A lengthy pretrial incarceration does "not inherently offend a defendant's liberty interest" and because he was sentenced to life imprisonment, he "did not suffer an increase in his total time in prison as a result of pretrial delays." *See Frye*, 489 F.3d at 213; *see also Gray v. King*, 724 F.2d 1199, 1204 (5th Cir. 1984) (finding no

oppressive pretrial incarceration where defendant received credit for pretrial incarceration to be applied to his sentence).

### e. Balancing of the Factors

The appellate court concluded by balancing the *Barker* factors. In finding that the weighing of all four factors illustrated that the trial court did not err in denying his speedy-trial motion, the court reasoned as follows:

> The twenty-two-month delay in the trial, for which the State gave no reason, weighs in favor of finding a speedy trial violation. Nevertheless, Carter's delay in presenting his speedy trial motion until the day before trial and his filing of a motion to dismiss based on alleged speedy trial violations weigh heavily against his claim violation. Moreover, Carter failed to make a showing that the delay of his trial prejudiced him. Based on this record, we find that the trial court did not err in denying Carter's speedy trial motion. We therefore overrule Carter's third issue.

*Carter*, 2020 WL 5223327, at *9.

Here, Carter failed to demonstrate that the state court's weighing of the *Barker* factors was unreasonable or contrary to federal law. While the delay of over 500 days is lengthy, Carter did not assert his right and failed to explain how he suffered prejudice stemming from the delay. His lengthy pretrial incarceration and conclusory claim that he sent a letter to the prosecutor asking for a speedy trial are insufficient to show that this right was violated.  Accordingly, Carter's claim that his right to a speedy trial was violated should be dismissed.

### 2. Claims of Trial Court Error

Carter further claims that the trial court erred by (1) allowing a Dallas special prosecutor "two bites at the apple" when prosecuting him, (2) overruling his objections to the indictment, (3) failing to recuse himself, (4) allowing the victim to authenticate his voice on a phone call, (5) failing to grant a mistrial, and (6) overruling a *Batson* challenge.

The United States Court of Appeal for the Fifth Circuit has repeatedly held that claims of trial court error may justify federal habeas relief if the error "is of such magnitude as to constitute a denial of fundamental fairness under the due process clause." *See Krajcovic v. Director*, 2017 WL 3974251 at \*6 (E.D. Tex. June 30, 2017) (quoting *Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir. 1983)); *see also Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (To be actionable in federal court, the trial court error must have "had substantial and injurious effect or influence in determining the jury's verdict.").  The petitioner must also show that "there is more than a mere possibility that [the error] contributed to the verdict. It must have had a substantial effect or influence in determining the verdict." *Engle v. Lumpkin*, 33 F.4th 783, 796 n.37 (5th Cir. 2022) (quoting *Woods v. Johnson*, 75 F.3d 1017, 1026 (5th Cir. 1996)). In other words, Carter must show that he was prejudiced by the purported trial court errors.

### a. Special Prosecutor

Carter first claims that the trial court allowed the Dallas County Assistant District Attorney "two bites at the apple evoking the existence of unfairness so that Petitioner would not be subjected to 'vexatious litigation,'" (Dkt. #1, pg. 33). But, as Respondent argues, Carter wholly fails to explain how the Dallas County prosecutor subjected him to "unfairness" or how the prosecutor prejudiced his defense. Rule 2(c) of the Rules Governing Section 2254 Proceedings in the United States District Courts states that a habeas petition must (1) specify all of the grounds of relief available to the petitioner, and (2) state the facts supporting each ground. Conclusory allegations do not raise constitutional issues in a habeas case. *See Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982). This claim should be dismissed.

### b. Objections to the Indictment

Next, Carter maintains that the trial court erred by overruling his objections to the indictment. Specifically, he argues that the trial court overruled his objections based on "no court/State seal" and the time of filing the indictment, (Dkt. #1, pg. 33).

The state habeas court rejected this claim by denying Carter's state habeas application—and the rejection is entitled to deference even if the state court did not enter written findings. The failure to enter express findings of fact does not preclude deference under the AEDPA because "[a]s a federal court, we are bound by the state habeas court's factual findings, both implicit and explicit." *See Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004); *see also Becerril v. Quarterman*, 2007 WL 1701869 *4 (S.D. Tex. Jun. 11, 2007) ("The Texas Court of Criminal Appeals adopted the trial court's findings when it denied relief.  A federal court is bound by the state habeas court's factual findings, both implicit and explicit.") (citation omitted).

Carter has not shown that the state court's denial of this claim was unreasonable. Indeed, his complaints regarding the sufficiency of his indictment fail because such claims are not matters for federal habeas review unless the indictment is so defective that it deprives the trial court of jurisdiction. *See Williams v. Collins*, 16 F.3d 626, 637 (5th Cir. 1994). Moreover, "state law dictates whether a state indictment is sufficient to confer" jurisdiction on a court. *Id*. Because the state court implicitly held that Cater's indictment was sufficient, this Court need not address the issue. *See McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994) ("Where the state courts have held that an indictment is sufficient under state law, a federal court need not address that issue."). This claim should be dismissed.

### c. Failing to Recuse

Carter also contends that the trial court was biased and that the court's "remarks, rulings, and admissions created an unacceptable risk that was impermissible and inappropriate, penalizing Petitioner for exercising State and constitutional rights guaranteed for and while standing trial," (Dkt. #1, pg. 36).

Every criminal defendant has the right to a fair and impartial tribunal and, therefore, actual or presumptive judicial bias may constitute a due process violation. *See Buntion v. Quarterman*, 524 F.3d 664, 672 (5th Cir. 2008). However, judicial bias is "not lightly established" and, in almost every case of judicial bias, the bias has been presumed. *Id.*; *see also Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1052 (5th Cir. 1997). The Supreme Court has found presumptive bias in three situations: (1) "the decision maker has a direct, personal, substantial, and pecuniary interest in the outcome of the case; (2) an adjudicator has been the target of personal abuse or criticism from the party before him; and (3) a judicial or quasi-judicial decision maker has the dual role of investigating and adjudicating disputes and complaints." *Buntion*, 524 F.3d at 672 (citing *Bigby v. Dretke*, 402 F.3d 551, 559 (5th Cir. 2005) (citing Supreme Court cases)).

Here, Carter's allegations of judicial bias are purely conclusory—as he points to nothing in the record to show any predisposition, bias, or anything that would apply to the three factors elucidated above. Conclusory allegations do not present a constitutional issue in a habeas case. *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) ("We are thus bound to re-emphasize that mere conclusory allegations do not raise a constitutional issue in a habeas proceeding."). Moreover, Carter's articulation of this claim—particularly his focus on the trial court's rulings—bolsters the recommendation to dismiss this claim because a court's rulings almost never demonstrate judicial bias. This claim should be dismissed.

14

### d. Authenticating a Phone Call

Carter complains that the trial court "allowed the victim [to] authenticate Dallas County jail recorded phone [call] between the Petitioner and Petitioner's father stating victim knew the voices in the call, which trial judge determined as factor of admissibility," (Dkt. #1, pg. 35). He states that "an expert should have determined the authenticity." *Id*.

Carter, however, failed to show that the state habeas court's adjudication of this was unreasonable. In fact, the docket demonstrates that this claim is refuted by the record because Carter stipulated to the admission of the entire phone call—against his own attorney's advice, (Dkt. #16-6, pg. 68-74). This claim should be dismissed.

### e. Failing to Grant a Mistrial

Carter next argues that the trial court erred in failing to grant a mistrial. Specifically, he contends that a mistrial was warranted when the State's complaining witness mentioned enhancements during cross-examination. Carter explains that the trial court denied the motion for a mistrial but urged the State to admonish the witness.

Once again, Carter fails to demonstrate that the state court's adjudication of this claim was unreasonable or contrary to federal law. He has not shown that a mistrial was warranted, as his conclusory claim does not present a constitutional concern. This claim should be dismissed.

### f. Overruling Batson Challenge

Finally, Carter insists that the trial court erred in overruling his *Batson* challenge. He argues that even though the trial court overruled his challenge, the court admitted there was an error before the jury was seated because the court remarked that it "took a long pause in between seating this jury, waiting to see if anyone would make the challenge," (Dkt. #1, pg. 35). Carter argues that the trial court failed to stop the proceedings and correct the egregious error.

The appellate court addressed this claim on Carter's direct appeal. In affirming the trial court, the court found that Carter's *Batson* challenge was not preserved. Carter raised his *Batson* challenged "after the jury weas selected and sworn"—which is not timely under Texas law. *See* Tex. Code Crim. Proc. Ann. art. 35.261(a).

Here, on federal habeas review, Carter wholly failed to show that the state court's adjudication of this claim was unreasonable or contrary to federal law. Carter does not explain how or why the state court's rejection of this claim was and error; simply stating that "the trial judge failed to stop the proceedings and correct an [obvious] egregious harm to the Petitioner" does not illustrate a constitutional issue. Carter's *Batson* claim should be dismissed.

<u>3. Claims of Ineffective Assistance of Counsel</u>

Turning to Carter's claims of ineffective assistance, the Court notes that he argues defense counsel was constitutionally ineffective for failing to (1) notify, contact, and prepare, (2) investigate, (3) interview and call witnesses, (4) object, and (5) urge a timely *Batson* challenge. Carter must demonstrate both deficient performance and ensuing prejudice.

*a. Failing to Notify, Contact, and Prepare*

Carter first contends that initial, first-appointed counsel was ineffective for failing to contact him, interview him, and prepare for the proceedings, (Dkt. #1, pg. 36). He cites *United States v. Cronic*, 466 U.S. 648 (1984), and states that counsel's conduct during critical stages of the proceedings constitute presumptive prejudice.

The Supreme Court has held that the most obvious denial of the right of counsel is the "complete denial of counsel." *Cronic*, 466 U.S. at 659 ("The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denial counsel at a critical stage if his trial."). But whether an attorney rendered effective assistance is measured through the

adversarial process—rather than the "accused's relationship with his lawyer" or the specific number of attorney-client meetings. *See Lowenfield v. Phelps*, 817 F.2d 285, 289 (5th Cir. 1987); *see also Austin v. Davis*, 647 F. App'x 477, 490 (5th Cir. 2016) ("The rationale of *Cronic* applies only when counsel's failure to test the prosecutor's case is 'complete'; counsel must fail to oppose the prosecution 'throughout the … proceeding as a whole.") (internal citation omitted).

Here, Carter's conclusory claims of counsel's "complete absence" does not establish a constitutional violation. Similarly, his contention that constitutional errors—without details, specifics, or a showing of prejudice—contributed to his guilty verdict are insufficient. Contrary to Carter's contentions, "prejudice is not presumed unless an attorney *entirely* fails to defend his client." *Thomas v. Davis*, 968 F.3d 352, 355 (5th Cir. 2020). There is nothing in the record to support Carter's contention that his appointed counsel entirely failed to defend him. Carter's claims under *Cronic* should be dismissed.

### b. Failure to Investigate

Carter next maintains that counsel failed to investigate, obtain, and present evidence of his mental health records rendered him ineffective, (Dkt. #1, pg. 38). To show that counsel was ineffective for failing to investigate, a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial. *See Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005). If defense counsel was aware of a fact that would cause a reasonable attorney to investigate further, then the failure to investigate further may be deficient performance. *See Thomas v. Lumpkin*, 995 F.3d 432, 451 (5th Cir. 2021). Federal courts are wary of such claims, as these contentions result in analyses of varying degrees: Did counsel investigate enough? Did counsel present enough mitigating evidence? *See Dowthitt v. Johnson*, 230 F.3d 733,

743 (5th Cir. 2000) ("We must be particularly wary of arguments that essentially come down to a matter of degrees. … Those questions are even less susceptible to judicial scrutiny.").

Here, however, Carter fails to allege what, specifically, should have been investigated and how any investigation would have altered the outcome of the proceedings. While he states that counsel failed to investigate, obtain, or prepare evidence of his mental health, he provides no elaboration and does not articulate how it would have altered the outcome of his trial. Similarly, Carter failed to demonstrate that an investigation into authenticating the phone call would have changed the outcome of his trial—particularly given Carter's insistence that the entire phone call be admitted into evidence against his counsel's advice. Accordingly, these claims should be dismissed.

### c. Failing to Interview and Call Witnesses

Next, Carter contends that counsel was ineffective for failing to interview and call witnesses. Specifically, he states that counsel failed to "call and interview Petitioner's witnesses in reg[ards] to audio, video, and medical records" (Dkt. #1, pg. 38). Carter notes that he provided counsel with the names and phone numbers of witnesses to call and interview; however, counsel "only" called Ms. Jones "and "relied on the investigative work of the State." *Id*. at pg. 39.

Complaints of uncalled witnesses are unfavored on federal habeas review because such allegations concerning what a proposed witness would have testified to are largely speculative. *See Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002); *see also Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981) ("Complaints of uncalled witnesses are not favored because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified to are largely speculative.") (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)). In order to show that counsel was ineffective for failing to call a witness, the

petitioner must identify those witnesses and establish, by affidavit or otherwise, what those witnesses would have testified to at trial. *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001). Further, the petitioner must not only show that the witness's proposed testimony would have been favorable, but also that the witness would have actually testified at trial. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).

Here, Carter's allegation that counsel failed to call and interview his witnesses for audio, video, and medical records is not enough—as it purely conclusory. Carter does not identify a single witness that counsel should have called and wholly fails to illustrate that such witness testimony would have been favorable to his defense. This claim should be dismissed.

### d. Failure to Object

Carter further argues that counsel was ineffective for failing to object to alleged prosecutorial misconduct during its voir dire. He states that the prosecutor "explained to the jury during voir dire that the 'F' meant felony and the 'M' meant misdemeanor while reading the indictment," which informed the jury that Carter had previous convictions.

Trial counsel is not ineffective for failing to raise a meritless or futile objection. *See Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997) (explaining that the "failure to assert a meritless objection cannot be grounds for a finding of deficient performance."). Even if counsel had a basis to object, counsel is not ineffective for failing to do so if the failure was trial strategy. *See Burnett v. Collins*, 982 F.2d 922, 930 (5th Cir. 1993). This Court will not second-guess reasonable trial strategy.

Carter, here, has not demonstrated that an objection on this basis would have been meritorious. As Respondent indicates, Carter seems to be articulating how the prosecutor described the charges to the potential jury through the indictment. He has not shown that simply reading or

explaining the charges to the potential jury prejudiced him. Moreover, given that Carter insists that the explanation of the charges informed the jury that he had prior convictions, one could argue that any objection on this basis would have necessarily further highlighted information damaging to Carter's case. The decision to forgo presenting "double-edged" evidence—one that could either help or harm a defendant—is reasonable strategy and is not ineffective assistance. *See*, *e.g.*, *Hopkins v. Cockrell*, 325 F.3d 579, 586 (5th Cir. 2003) ("This Court will has repeatedly denied claims of ineffective assistance of counsel for failure to present 'double-edged' evidence where counsel has made an informed decision not to present it.").

Carter also maintains that counsel should have objected to Ms. Duncan's testimony, in which she testified about an email between her and Carter that illustrated their "tumultuous" relationship. He insists that trial counsel should have objected to and impeached her testimony, as she replied "yes" when the prosecutor asked her if she was "brought to Cass County because of prior charges … in regards to petitioner," (Dkt. #1, pg. 40). Carter argues that counsel should have "objected and requested voir dire examination on Duncan to have Court determine whether jury could find that Petitioner was found guilty of committing family violence against Duncan." *Id*.

Here, again, Carter failed to show that an objection on this basis was meritorious. To the extent that he argues that counsel was ineffective for failing to adequately cross examine Duncan, Carter failed to articulate the impact of any additional cross-examination. *See Day v. Quarterman*, 566 F.3d 527, 540 (5th Cir. 1996) (citing *United States v. Irby*, 103 F.3d 126 (5th Cir. 1996) (finding claim of ineffective assistance based on counsel's failure to adequately cross examine witnesses because the petitioner failed to set forth the impact of any additional cross examination)). Carter fails to articulate the impact of additional cross-examination, as he merely states that counsel "should" have objected.

20

Moreover, with respect to Carter's claim that counsel should have impeached Duncan with her own previous criminal history, such claim is moot. The trial record reflects that Duncan testified to her own past offenses, (Dkt. #16-6, pg. 201). Because counsel cannot be ineffective for failing to present cumulative evidence, this claim should be dismissed.

Carter claims that trial counsel was ineffective for failing to object to the introduction of evidence of his bad character. He maintains that the State "dwelled on [his] bad character" and incited the passions of the jury by stating that "Petitioner beat his wife," during opening statements. "The purpose of an opening statement is to tell the jury what the case is about and to outline the proof." *United States v. Breedlove*, 576 F.2d 57, 60 (5th Cir. 1978). A prosecutor's articulation of what he or she believes the evidence will demonstrate or has demonstrated is not error. *See Ortega v. McCotter*, 808 F.2d 406, 410 (5th Cir. 1987). But the record shows that trial counsel, when the State made this comment during opening arguments, objected—and the trial court admonished the State to argue within the proper confines of opening statements, (Dkt. #16-5, pg. 154). Because counsel objected, Carter cannot show that he was prejudiced. This claim should be dismissed.

### e. Untimely Batson Challenge

In his final claim, Carter asserts that counsel was ineffective for raising an untimely *Batson* challenge. The Sixth Amendment guarantees a criminal defendant the right to have his jury chosen from a venire or panel representing a fair cross-section of the community. *Taylor v. Louisiana*, 419 U.S. 522, 527-30 (1975). In *Taylor*, the Supreme Court cited its long line of equal protection cases outlawing the purposeful exclusion of racial and ethnic groups from service on grand and petit juries in support of its interpretation of the Sixth Amendment's fair cross section requirements.

To present a prima facie case of a violation of the fair cross-section requirement, the defendant must show that (1) the group alleged to be excluded is a distinctive group; (2) the representation of this group in venires from which juries are selected is not fair and reasonable to the number of such persons in the community; and (3) this underrepresentation is due to the systemic exclusion of the group in the jury selection process. *Duren*, 439 U.S. at 364. *Duren* does not require that "juries actually chosen must mirror the community." *Taylor*, 491 U.S. at 538.

The trial court **may** consider "all relevant circumstances" when determining if the defendant made a prima facie case. *See Batson v. Kentucky*, 476 U.S. 79, 96 (1986). Once the defendant makes a prima facie showing, then the State must articulate a neutral explanation for the challenge. *Id*. at 97.

Here, the record demonstrates that counsel objected to the State striking two black individuals from the potential jury. The record also shows that the State proffered race-neutral explanations for the strikes: One juror's father was in prison for a crime against her sister and she had a difficult time believing he was guilty, and the other juror stated that he would want to see DNA or physical evidence when the State did not anticipate offering such evidence. *See Carter*, 2020 WL 5223327, at *2. While the trial court sustained Carter's objection because it was untimely, the *Batson* challenge was nevertheless meritless because the State offered two race-neutral explanations for striking the two jurors. Accordingly, Carter cannot demonstrate that a timely *Batson* challenge would have affected the outcome of the trial and this claim should therefore be dismissed.

## VI. Certificate of Appealability

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017).

Instead, under 28 U.S.C. § 2253(c)(1), he must first obtain a certificate of appealability ("COA") from a circuit justice or judge. *Id.*

Although Petitioner has not yet filed a notice of appeal, the court may address whether she would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court. Further briefing and argument on the very issues the court has just ruled on would be repetitious."). A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).

To make a substantial showing, the petitioner need only show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The Supreme Court recently emphasized that the COA inquiry "is not coextensive with merits analysis" and "should be decided without 'full consideration of the factual or legal bases adduced in support of the claims.'" *Buck*, 137 S. Ct. 773 (quoting *Miller-El*, 537 U.S. at 336).

Moreover, "[w]hen the district court denied relief on procedural grounds, the petitioner seeking a COA must further show that 'jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Rhoades v. Davis*, 852 F.3d 422, 427 (5th Cir. 2017) (quoting *Gonzalez v. Thaler*, 565 at 140-41).

Here, Petitioner failed to present a substantial showing of a denial of a constitutional right or that the issues he has presented are debatable among jurists of reason. He also failed to

demonstrate that a court could resolve the issues in a different manner or that questions exist warranting further proceedings. He is therefore not entitled to a certificate of appealability.

<u>RECOMMENDATION</u>

Accordingly, it is recommended that Petitioner's habeas corpus petition be dismissed with prejudice. It is further recommended that Petitioner Carter be denied a certificate of appealability *sua sponte*.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**SIGNED this 1st day of November, 2023.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE